# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## HELENA DIVISION

FIREMAN'S FUND INSURANCE COMPANY,
MEDICAL LIABILITY MUTUAL INSURANCE COMPANY
f/k/a HEALTHCARE UNDERWRITERS MUTUAL INSURANCE
COMPANY                                                                                          PLAINTIFFS

VS.                                         NO: 2:05CV00072

EVERGREENE PROPERTIES OF
NORTH CAROLINA, LLC                                                         DEFENDANT

## COURT'S FINDINGS OF FACT AND CONCLUSIONS OF LAW

Following a bench trial on April 23, 2007, the Court makes the following findings of fact and conclusions of law.

### Findings of Fact

1. Plaintiffs provided coverage to Defendant Evergreene Properties of North Carolina, LLC ("Evergreene") pursuant to policies of liability insurance which were in effect from January 15, 2000 to January 15, 2001.

2. Dr. Stephen D'Amico, the designated medical expert for the Estate of Thompson in the lawsuit filed against Evergreene in the Circuit Court of Lee County, Arkansas, Case No. ClV 2003-42 (the "Nursing Home Suit") indicated the following acts/omissions and injuries to ldella Thompson in the course of her residence at Crestpark Retirement Inn of Marianna:

> A. Failure to adequately respond to symptoms of Gl Bleed experienced by Ms. Thompson, which resulted in her death on June 30, 2001;
>
> B. Failure to adequately respond to symptoms of pain expressed by Ms. Thompson, which resulted in a decreased chance of survival of her left leg which was amputated

      in March 2001;

      C. Failure to adequately address multiple urinary tract infections suffered by Ms. Thompson over the course of her residence at Crestpark;

      D. Failure to adequately address multiple episodes of Ms. Thompson's engaging in "finger-painting" with her own feces, which likely in turn resulted in an e coli infection of Ms. Thompson's left toe in March 2001.

      E. Failure to adequately address symptoms of pneumonia prior to Ms. Thompson's hospitalization for pneumonia and congestive heart failure in March 2001.

3. With regard to the allegation of failure to properly respond to GI Bleed, Dr. D'Amico opined that the facility failed to respond to symptoms of GI bleed from May 2001 until June 30, 2001, the date of Ms. Thompson's death.

4. Ms. Janice Kindrick, who was hired as a nurse consultant by defense counsel for Evergreene, authored a report entitled "Chronology of Events Leading to GI Bleed" in the course of her evaluation of the case at the behest of defense counsel.

5. Ms. Kindrick's report summarizes facility chart entries which she found indicated symptoms of GI Bleed beginning on May 19, 2001.

6. Ms. Kindrick's report concludes that the facility did not meet the standard of care with regard to Ms. Thompson's GI bleed, and that the failure did contribute to Ms. Thompson's death.

7. Dr. D'Amico opined in his deposition testimony in the Nursing Home Suit and in his testimony given at the trial of this matter that the cause of Ms. Thompson's death was a GI Bleed.

8. Ms. Thompson's left leg was amputated above the knee on March 23, 2001.

9. According to the testimony of Dr. D'Amico, the facility was negligent in failing to

adequately respond to symptoms of pain expressed by Ms. Thompson in the Fall of 2000. According to Dr. D'Amico, had these symptoms of pain been properly responded to by the facility, therapies could have been administered, such as a stint or possibly vascular surgery, which would have given Ms. Thompson's left leg an increased chance of survival.

10. The testimony of Dr. D'Amico in his deposition given in the Nursing Home Suit as well as at the trial of this matter was that the facility failed to properly evaluate and assess the reason Ms. Thompson suffered from multiple urinary tract infections, and had the facility done so, Ms. Thompson would not have experienced urinary tract infections on a repeated basis as she did.

11. The relevant facility chart entries introduced at trial indicate that Ms. Thompson suffered from urinary tract infections on or around the following dates: March 22, 2000; May 16, 2000; September 2, 2000; February and March 2001.

12. Dr. D'Amico opined in his deposition given in the Nursing Home Suit as well as at the trial of this matter was that the facility failed to properly respond to episodes of Ms. Thompson's engaging in "finger painting" with her own feces, and that had the facility properly responded, then further episodes could have been prevented.

13. The relevant facility chart entries indicate that "finger-painting" episodes occurred on the following dates: August 28, 2000; September 5, 2000; September 10, 2000; September 11, 2000; September 12, 2000; September 15, 2000; September 9, 2000; December 26, 2000; January 29, 2001;
and June 4,2001.

14. Dr. D'Amico further opined with regard to the "finger-painting" episodes that they probably resulted in an e-coli infection which Ms. Thompson experienced in her left toe in March 2001.

15. The lab report of Dynacare Laboratories dated March 11, 2001 indicates that a culture taken from Ms. Thompson's left great toe was infected with the e-coli bacteria.

16. Dr. D'Amico opined that prior to being hospitalized in March 2001 for pneumonia and congestive heart failure, the facility failed to properly and adequately address symptoms of pneumonia from which she was suffering prior to the hospitalization, such as cough. Dr. D'Amico opined that Ms. Thompson never returned to her "baseline condition" subsequent to this hospitalization in March 2001.

## Conclusions of Law

1. Plaintiffs are liable for the amount of the settlement attributable to injuries suffered by Ms.Thompson from February 3, 2000 to January 15, 2001, and Defendant is liable for the amount of the settlement attributable to injuries suffered by Ms. Thompson from January 15, 2001 to June 30, 2001. *MedMarc Cas. Ins. Co. v. Forest Healthcare*, 359 Ark. 495,199 S.W.3d 58 (2004).

2. As a result of the timing and relative severity of the injuries alleged by the Estate of Thompson set forth above, the Court finds that the total settlement in this matter was reasonable, and an equitable allocation of the settlement requires Evergreene to pay 15% of the settlement, with Plaintiffs bearing responsibility for 85%

3. Therefore, it hereby ordered, adjudged, and decreed that Evergreene shall pay to Plaintiffs the amount of $67,500.00 , said amount representing the amount of the settlement which in equity ought to be borne by Evergreene instead of Plaintiffs.

IT IS SO ORDERED this 19th day of November, 2007.

                                                  James M. Moody
                                                  United States District Judge